## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ALABAMA
## NORTHERN DIVISION

| | |
|---|---|
| **PATRICK WOODEN,** ) | |
| ) | |
| **Plaintiff** ) | |
| ) | |
| **v.** ) | **Case No.: _____** |
| ) | |
| **RIVER JACOBS; JOHN DOE 1 AKA** ) | |
| **OFFICER WARD;  JOHN DOE 2 AKA** ) | |
| **OFFICER CLEMMONS; JOHN DOE 3** ) | |
| **JOHN DOE 4; WILLIAM STREETER;** ) | |
| **CHADWICK CRABTREE and JOHN** ) | |
| **HAMM.** ) | |
| **Defendants** | |

---

## COMPLAINT

---

Plaintiff files this complaint alleging violations of his constitutional rights by the named defendants.

## <u>INTRODUCTION</u>

1.      This is a complaint made on the basis of serious violations of the 42 U.S.C. §1983 resulting in serious injuries to Plaintiff Patrick Wooden.  Plaintiff brings this claim to redress the deprivation of Plaintiff's rights under the Fourth, Eight, and Fourteenth Amendments of the United States Constitution at the hands of the named Defendants who were charged with and had a duty to ensure his care and safety.  Plaintiff seeks monetary damages, punitive damages, and attorney's

fees.

## JURISDICTION AND VENUE

2.     The Federal claims in this action arise under the Constitution of the United States' Fourth Amendment, Eighth Amendment, and Fourteenth Amendment's prohibition against cruel and unusual punishment and the Fourteenth Amendment for procedural due process pursuant to 42 U.S.C. §1983.  The state law claims arise under Alabama law.

3.     This is a proper venue for Plaintiff's claims because actions that form the basis of his claims occurred within the Northern District of Alabama.

## PARTIES

4.     Plaintiff, Patrick Wooden, is an adult male inmate in the custody of the Alabama Department of Corrections (ADOC).  At the time of the incident which makes the basis of this lawsuit, Plaintiff was incarcerated at the Limestone Correctional Institution (hereinafter referred to as "Limestone") in Harvest, Alabama, in the Northern District.

5.     Defendant, River Jacobs, was at all relevant times and upon information and belief a sergeant, employed by ADOC at the Limestone Correctional Institution in Harvest, Alabama in the Northern District of Alabama. He is sued in his individual capacity.

6.     Defendant John Doe 1 aka Officer Clemmons (hereinafter referred to

as Officer Clemmons), was at all relevant times a correctional officer employed by ADOC at the Limestone Correctional Institution in Harvest, Alabama in the Northern District of Alabama. He is sued in his individual capacity.

7.    Defendant John Doe 2 aka Officer Ward (hereinafter referred to as Officer Ward, was at all relevant times a correctional officer, employed by ADOC at the Limestone Correctional Institution in Harvest, Alabama in the Northern District of Alabama. He is sued in his individual capacity.

8.    Defendant William Streeter is a Correctional Warden at Limestone Correctional Facility.  At all times relevant to the events at issue in this case Defendant Streeter was serving in the capacity of Correctional Warden and as such was acting under color of law.  Defendant Streeter is legally responsible for the operation of the Limestone Correctional Facility and for the welfare of all the inmates of that prison.

9.    Defendant Chadwick Crabtree at all times relevant to the events at issue in this case was serving the capacity of Correctional Warden and as such was acting under color of law.  Defendant Crabtree was legally responsible for the operation of the Limestone Correctional Facility and for the welfare of all the inmates of that prison.

10.    Defendant John Hamm is the Commissioner of the Alabama Department of Corrections.  Defendant Hamm was appointed Commissioner in

2022 and was at all times relevant to the events in this case, serving in the Capacity of Commissioner, and as such, was acting under color of law. Defendant Hamm is legally responsible for the operation of all Alabama correctional facilities, including Limestone Correctional Facility, and for the welfare of all the inmates in the Alabama Correctional Facilities.

11.    Each Defendant is sued individually and in their official capacity.

## **FACTS**

12.    Plaintiff was an inmate and housed at Limestone Correctional Facility on June 20, 2023 in the G Dorm.

### **The Limestone Correctional Facility & The Department of Justice Report**

13.    The dangerous conditions in Alabama's prisons are well known to Defendants and well documented.

14.    On or about July 23, 2020, the Department of Justice issued a report (hereinafter referred to as July Report).[1]

15.    The Report indicates there is reasonable cause to believe that the conditions at the Limestone Correctional Facility violated the United States Constitution.  The 28-page report indicates that correctional officers use excessive force on prisoners who are compliant; unlawfully use force as punishment or

---

[1]July 23, 2020 United States Department of Justice Report on Alabama Prisons, https://www.justice.gov/crt/case-document/file/1297031/dl.pdf

retribution; ADOC employees often fail to report or accurately document uses of force; uses of force are frequently not investigated by I&I; uses of excessive force are inadequately addressed by ADOC and use of force investigations are frequently inadequate.    Plaintiff avers these conditions exist at Limestone Correctional Facility and caused and/or contributed to the injuries sustained by Plaintiff.

16.    The Report also indicates that severe levels of overcrowding and understaffing contribute to systemic use of excessive force.    Plaintiff avers these conditions exist at Limestone Correctional Facility and caused and/or contributed to the injuries sustained by Plaintiff.

17.    The Report further states that the officers' generalized fear for their own safety may lead them to use more force than is necessary and appropriate in cases where no such threat is present.    Therefore, by failing to adequately staff prisons, Alabama is contributing to dangerous conditions that give rise to uses of excessive force.    Plaintiff avers these conditions exist at Limestone Correctional Facility and caused and/or contributed to the injuries sustained by Plaintiff.

18.    According to the Report and Plaintiff, use of force is so commonplace in Alabama's prisons, including Limestone Correctional Facility, that officers and supervisors watch other officers brutally beating prisoners and do not intervene.

19.    On December 9, 2020, after continued violations; more than a year after the original report by the Department of Justice; and five months after the

July 2020 Department of Justice Report, the Department of Justice filed suit against the State of Alabama and ADOC alleging the conditions at Alabama's prisons for men continue to violate the Constitution because Alabama fails to provide protection from prisoner-on-prisoner sexual abuse, fails to provide safe and sanitary conditions, and subjects prisoners to excessive force at the hands of prison staff.[2]

20.     Limestone Correctional Facility is a maximum security for men in Harvest, Alabama located in Madison County.  It opened in1984 with a designed capacity of 1,628.  Upon information and belief at the time of the incident which makes the basis of this complaint, Limestone Correctional Facility housed approximately 2,459 inmates which is 51% over capacity.[3]

21.     Despite being apprised of all of the conditions, Defendants acted with deliberate indifference to the care and safety of Plaintiff and other similarly situated inmates and in fact took no action to remedy the conditions at Limestone Correctional Facility.

## PLAINTIFF PATRICK WOODEN

22.     On June 20, 2023, Defendant Jacobs was in a physical altercation with

---

[2] Press Release with link to the complaint, "Justice Department Files Lawsuit Against the State of Alabama of Unconstitutional Conditions in State's Prisons for Men." https://www.justice.gove/opa/pr/justice-department-files-lawsuit-against-state-alabama-unconstitutional-conditions-states.
[3] Alabama Department of Corrections Monthly Statistical Report for June 2023. https://doc.alabama.gov/docs/MonthlyRpts/June%202023.pdf

an inmate at Limestone during the morning shift at or around 4:10 a.m. Plaintiff was not involved in this altercation. Following this altercation, Defendant Jacobs did not leave at 6:00 a.m. when his shift ended. It is upon information and belief that Defendant Jacobs didn't leave until approximately 8:00 a.m. on June 20, 2023.

23.    At approximately 6:00 p.m. on June 20, 2023, Defendant Jacobs returned to work for a second shift.

24.    Between 8:00 p.m. and 9:00 p.m. officers entered Housing Unit G – G Dorm for their routine count.

25.    At this time, Plaintiff was exiting the restroom when Defendant Jacobs approached Plaintiff and told him to follow him to the shift office. Plaintiff asked Defendant Jacobs why he was going to the shift office this late, and Defendant Jacobs replied that Plaintiff knew what was going on.

26.    Defendants Ward and Clemmons were with Defendant Jacobs and accompanied Plaintiff to the shift office. Two additional officers (John Doe 3 and John Doe 4) whose names are unknown at this time, also accompanied Plaintiff to the shift office.

27.    As Plaintiff was walking to the shift office, Defendants Clemmons and Ward, along with two other officers (Defendant John Doe 3 and Defendant John Doe 4), were behind Plaintiff and Defendant Jacobs was in front of Plaintiff.

28.    Plaintiff asked Defendant Ward why he was going to the shift office.

Defendant Ward said that he didn't know and that it was Defendant Jacobs' call. As they were walking out of the G-Dorm Gate, Plaintiff asked one more time why he was being taken to the shift office. This time, Defendant Jacobs responded, "you bout to find out."

29.    As they passed the ICS building, Defendant Jacobs, who was in front of Plaintiff, sped up his pace. As a result of speeding up, Defendant Jacobs rounded the corner by Captain Wallace's office which is a known blind spot, prior to Plaintiff and the other officers.

30.    As Plaintiff rounded the corner, Defendant Jacobs was standing facing Plaintiff and immediately hit Plaintiff on the left side of his face causing his head and eye to bleed. He swung again, but Plaintiff attempted to block the impact by placing his arm up in front of his head and face.

31.    Defendant Jacobs continued beating Plaintiff with the baton mercilessly and for no reason. When Plaintiff would not fall to the ground Defendant Ward or Defendant Clemmons "shot the cag[4]" under him causing Plaintiff to fall.

32.    Once on the ground Defendant Jacobs continued to beat Plaintiff with the baton, hitting him on his body including his legs and ankles.

33.    As Plaintiff begged for Defendant Jacobs to stop and Defendant John

---

[4] A slang phrase referencing being intentionally tripped by another.

Doe 3 and Defendant John Doe 4 to assist, Defendant Jacobs yelled, "now bitch steal on me."

34.   Defendants Clemmons, Ward, John Doe 3 and John Doe 4 were present for the entire assault and failed to timely intervene and/or prevent this beating.    While the beating was taking place, Plaintiff could hear Defendant Clemmons say, "They said you swung on an officer."

35.   Plaintiff believes this beating was planned and premediated by the Defendants as punishment resulting from the actions of another inmate that Defendant Jacobs was in an altercation with.

36.   After Plaintiff was severely beaten, Defendant Clemmons finally intervened; picked Plaintiff up and put handcuffs on him.   However, neither Defendant Clemmons, John Doe 3, nor John Doe 4 intervened before Plaintiff suffered serious injuries including those to his legs, ankle, eye, head, wrist, hand and fingers.

37.   Plaintiff was taken to the shift office and then to healthcare where he was seen by a nurse, who stated that he needed medical attention.

38.   Following being photographed by Lt. Johnson, Plaintiff was transported to Huntsville Hospital in Huntsville, Alabama.

39.   Plaintiff's eye was swollen shut; he had to get stitches above his left eye; his wrist was broken; he had to have surgery on his hand and pins placed in

three fingers.  Plaintiff has suffered and continues to suffer from mental anguish and emotional distress including post-traumatic stress disorder.

40.    Plaintiff further spent two and a half months on suicide watch and lost money and personal items.

41.    As a result of this merciless and unwarranted beating and in an effort to cover up and excuse their actions, Defendants filed meritless disciplinary actions against Plaintiff causing him to suffer negative consequences to his disciplinary file and classification status.

42.    Each Defendant named herein had personal and particular knowledge of the dangers of Limestone Correctional Facility.  Each Defendant, on each level, chose not to take investigative or corrective action in the numerous reports of violence at any of the prisons under the control of the ADOC.

43.    Defendants were further aware that Limestone Correctional Facility was overcrowded and understaffed and did not implement any policy change to address the understaffing and overcrowding at Limestone Correctional Facility.

44.    Defendants were also aware that officers overly utilized excessive force and used excessive force for the purpose of punishment and/or retribution. This was done so often that a culture of allowing and ignoring it permeated the system.  Defendants did not implement any policy change or take any action to address this systemic issue.

45.    Defendants failed to keep Plaintiff reasonably safe.

## COUNT I
## DELIBERATE INDIFFERENCE TO PATRICK WOODEN'S FOURTH, EIGHT, AND FOURTEENTH AMENDMENT RIGHTS UNDER 42 U.S.C. §1983

46.    Plaintiff adopts and incorporates the above paragraphs as if fully set forth herein.

47.    Through the acts and omissions alleged in this Complaint, Defendant subjected Plaintiff to a pattern and practice of conditions and confinement that deprived him of the rights, privileges, and immunities secured and protected by the Fourth, Eight, and Fourteenth Amendments to the Constitution of the United States, causing him grievous injuries and harm.

48.    Through the acts and omissions alleged in this Complaint, Defendants have exhibited deliberate indifference to the health and safety of Plaintiff, in violation of the rights and privileges, and immunities of Plaintiff as secured and protected by the Fourth, Eight, and Fourteenth Amendments to the Constitution of the United States.

49.    Defendants' actions, and lack thereof, were not conducted in good-faith and were in violation of clearly established Constitutional law and prison policies and procedures.   Their actions and/or inactions were unreasonable, unlawful, and unjustified.

50.    Defendants acted under color of state and/or local law.

51.    Each Defendant stood idly by, failing to take reasonable, and available steps to avoid the likelihood of harm, in light of the Report from the Department of Justice, knowing that their action and/or inaction could result in serious bodily harm to Plaintiff.  Each Defendant was aware, or should have been aware, of the following information and failed to act or intervene in the following ways:

      a.    Defendants Jacobs, Clemmons, Ward, John Doe 3 and John Doe 4 were Correctional Officers during the time of the events that make the basis of this complaint.  They knew or should have known of the massive overcrowding and the improper utilization and/or over utilization of excessive force at Limestone Correctional Facility.

      b.    Defendants Streeter and Crabtree were the Correctional Wardens during the time of the events that make the basis of this complaint.  They knew or should have known of the massive overcrowding and the improper utilization and/or over utilization of excessive force at Limestone Correctional Facility.

      c.    Defendant Hamm was the Commissioner for the Alabama Department of Corrections and knew or should have known of

the massive overcrowding, real risk of safety, improper and over utilization of force and other unsafe conditions occurring within the prison system he oversaw and specifically Limestone Correctional Facility. Despite the Department of Justice's findings, Defendant Hamm took no actions to remedy those violations that may have prevented severe and egregious harm and injury to Plaintiff. Defendant Hamm knew or should have known of the reporting failures and inadequacies leading to inmates such as Plaintiff being injured and/or harmed.

52.    As a result of Defendants' actions and/or inactions, Defendants caused Plaintiff to suffer substantial harm including but not limited to physical pain, mental anguish and emotional distress, damage to his disciplinary file and classification.

53.    Defendants' failures to take any steps to reasonably ensure Plaintiff's safety constituted a continuing violation of Plaintiff's Fourth and Eighteenth Amendment rights as incorporated against the states by the Fourteenth Amendment.

54.    As a direct and proximate result of Defendants' unreasonable and unlawful actions, Plaintiff was injured and harmed and is entitled to substantial compensatory damages and punitive damages.

WHEREAS PREMISES CONSIDERED, Plaintiff demands compensatory damages, punitive damages, attorney fees, and expenses and costs against the said Defendants, separately and severally, in an amount to be determined.

## COUNT II
## VIOLATION OF THE EIGHTH AMENDMENT, 42 U.S.C. §1983 BY RIVERS, CLEMMONS, WARD, JOHN DOE 3 AND JOHN DOE 4

55.    Plaintiff hereby adopts and incorporates the previous paragraphs as if fully set forth herein.

56.    Plaintiff was compliant and had not committed any act that would warrant utilizing force and therefore any use of force against him was unnecessary, excessive and done not to maintain or restore discipline but maliciously and sadistically with the purpose of causing harm.

57.    Even if the individual Defendants had a right to apply some force against Plaintiff, the force they used was excessive and done not to maintain or restore discipline but maliciously and sadistically with the purpose of causing harm.

58.    Defendants Jacobs, Clemmons and Ward beat, kicked, and repeatedly assaulted Plaintiff in violation of his Eighth Amendment right to be free from cruel and unusual punishment.

Defendants John Doe 3 and John Doe 4 watched while Defendants

Jacobs, Clemmons, and Ward beat, kicked, and repeatedly assaulted Plaintiff in violation of his Eighth Amendment right to be free from cruel and unusual punishment.

59.    Not a single Defendant intervened and/or acted to protect Plaintiff from these violations.

60.    As a result of Defendants' actions and/or inactions, Defendants caused Plaintiff to suffer substantial harm including but not limited to, physical pain, mental anguish and emotional distress, damage to his disciplinary file and classification.

61.    Defendants' failures to take any steps to reasonably ensure Plaintiff's safety constituted a continuing violation of Plaintiff's Eighteenth Amendment rights as incorporated against the states by the Fourteenth Amendment.

62.    As a direct and proximate result of Defendants' unreasonable and unlawful actions, Plaintiff was injured and harmed and is entitled to substantial compensatory and punitive damages.

WHEREAS PREMISES CONSIDERED, Plaintiff demands compensatory damages, punitive damages, attorney fees, and expenses and costs against the said Defendants, separately and severally, in an amount to be determined.

## COUNT III
## FAILURE TO PROTECT UNDER THE EIGHTH AMENDMENT, 42 U.S.C. 42 U.S.C. §1983 BY

63.     Plaintiff hereby adopts and incorporates the previous paragraphs as if fully set forth herein.

64.     Defendants were aware of the substantial risk of serious harm to Plaintiff, including the severe overcrowding, understaffing, and the improper utilization and over utilization of excessive force.

65.     Plaintiff in fact suffered serious harm and injury as a result of being kicked, hit, beaten, and repeatedly assaulted by Defendants Jacobs, Clemmons, and Ward.

66.     Defendants exhibited a conscious and callous indifference to that risk.

67.     Not a single Defendant intervened or acted to protect Plaintiff.

68.     Each Defendant stood idly by, failing to properly supervise and protect, and failing to take reasonable steps to avoid the likelihood of great harm to Plaintiff and similarly situated inmates.

69.     Defendants' actions and/or inactions, Defendants caused Plaintiff to suffer substantial harm including but not limited to, physical pain, mental anguish and emotional distress, damage to his disciplinary file and classification.

70.     Defendants' ongoing failures to take any steps to ensure and protect Plaintiff's safety constituted a continuing violation of Plaintiff's Eighth

Amendment rights as incorporated against the state by the Fourteenth Amendment.

71.    As a direct and proximate result of Defendants' unreasonable and unlawful actions, Plaintiff was injured and harmed and is entitled to substantial compensatory and punitive damages.

WHEREAS PREMISES CONSIDERED, Plaintiff demands compensatory damages, punitive damages, attorney fees, and expenses and costs against the said Defendants, separately and severally, in an amount to be determined.

## COUNT IV
## SUPERVISORY LIABILITY – FAILURE TO SUPERVISE
## PURSUANT TO 42 U.S.C. §1983

72.    Plaintiff hereby adopts and incorporates the previous paragraphs as if fully set forth herein.

73.    Defendants Streeter and Crabtree were the Warden's of Limestone Correctional Facility and were responsible for managing the work of lower-ranked officers and staff at Limestone Correctional Facility.

74.    Defendant Hamm was the Commissioner at ADOC at all times relevant and was also responsible for ensuring the safety of inmates and the constitutional administration of its facilities.

75.    Defendants Streeter, Crabtree, and Hamm had a custom and practice of allowing ADOC to underreport, understaff, and over-house Alabama prisons.

76.    The Department of Justice's Report but Defendants Streeter, Crabtree, and Hamm on notice of substantial risk of serious harm and injury to Plaintiff and the need to correct the deprivation of rights to Plaintiff, as well as, other Limestone Correctional Facility inmates.

77.    Defendants Streeter, Crabtree, and Hamm knew or should have known that Plaintiff was at risk for serious harm and injury by correctional officers and failed to prevent such from happening.

78.    Defendants exhibited a conscious and callous indifference to that risk.

79.    Not a single Defendant intervened or acted to protect Plaintiff.

80.    Each Defendant stood idly by, failing to properly supervise and protect, and failing to take reasonable steps to avoid the likelihood of great harm to Plaintiff and similarly situated inmates.

81.    Defendants' actions and/or inactions, Defendants caused Plaintiff to suffer substantial harm including but not limited to, physical pain, mental anguish and emotional distress, damage to his disciplinary file and classification.

82.    Defendants' ongoing failures to take any steps to ensure and protect Plaintiff's safety constituted a continuing violation of Plaintiff's Eighth Amendment rights as incorporated against the state by the Fourteenth Amendment.

83.    Defendants Streeter, Crabtree, and Hamm's policy and practice, actual or constructive knowledge of the danger to Plaintiff, and their complete failure to

protect Plaintiff was a proximate cause of Plaintiff's injuries.

84.    As a direct and proximate result of Defendants' unreasonable and unlawful actions, Plaintiff was injured and harmed and is entitled to substantial compensatory and punitive damages.

WHEREAS PREMISES CONSIDERED, Plaintiff demands compensatory damages, punitive damages, attorney fees, and expenses and costs against the said Defendants, separately and severally, in an amount to be determined.

## COUNT V
## STATE LAW CLAIMS FOR ASSAULT AND BATTERY

85.    Plaintiff hereby adopts and incorporates the previous paragraphs as if fully set forth herein.

86.    Defendants Jacobs, Clemmons, and Ward with an intent to cause physical injury and a reckless disregard for potential harm, assaulted Plaintiff by repeatedly kicking, hitting, and beating him.

87.    The acts of Defendants Jacobs, Clemmons, and Ward were done willfully, maliciously, outrageously, recklessly, deliberately, and with the intention to inflict personal injuries and emotional distress upon Plaintiff.

88.    Said acts of hitting, kicking, and beating Plaintiff for no justifiable reason caused Plaintiff to fear for his life and were done in reckless disregard of the probability of causing Plaintiff personal injuries, pain and suffering, fear of harm, and emotional distress.

89.    As a direct and proximate result of the acts of Defendants Jacobs, Clemmons, and Ward, Plaintiff suffered actual injuries, mental anguish and emotional distress.

90.    Plaintiff's injuries were severe enough that he had to seek medical treatment.

WHEREAS PREMISES CONSIDERED, Plaintiff demands compensatory damages, punitive damages, attorney fees, and expenses and costs against the said Defendants, separately and severally, in an amount to be determined.

## PRAYER FOR RELIEF

91.    Plaintiff seeks the following relief:

    a.    That this Court assume jurisdiction of the cause and exercise its supplemental jurisdiction of all state claims;

    b.    Grant the Plaintiff compensatory and punitive damages separately and severally against the above described Defendants and in their individual and official capacities;

    c.    For Plaintiff's classification status to be restored to its pre-June 20, 2023 status;

    d.    That Plaintiff's classification be adjusted to reflect any changes and/or positive deviations that he would be due had it not been impacted on or about June 20, 2023;

    e.    That Plaintiff's disciplinary file be expunged of all meritless disciplinaries related to the incident which makes the basis of this lawsuit;

f.    Enjoin Defendants from further acts of violence and indifference such as that alleged herein; and

g.    Award such other, further, and different relief as this Honorable Court may deem appropriate, fair and equitable.

Respectfully Submitted,

/s/ Tiffany Johnson Cole

_____

TIFFANY JOHNSON COLE
ROBERT SIMMS THOMPSON
Attorneys for Plaintiff

**OF COUNSEL:**
**LAW OFFICES OF ROBERT**
    **SIMMS THOMPSON, PC**
P.O. Box 830780
Tuskegee, Alabama  36083
334.727.6463
334.727.5746 (Facsimile)

THE PLAINTIFF HEREBY DEMANDS A TRIAL BY STRUCK JURY

/s/ Tiffany Johnson Cole

_____

OF COUNSEL