FILED

2026 Jan-14  AM 08:13
U.S. DISTRICT COURT
N.D. OF ALABAMA

# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF ALABAMA
## NORTHEASTERN DIVISION

| | | |
|---|---|---|
| PATRICK WOODEN, | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| vs. | ) | Civil Action: 5:25-cv-684-CLS |
| | ) | |
| RIVER JACOBS, *et al.*, | ) | |
| | ) | |
| **Defendants.** | ) | |

## MEMORANDUM OPINION

Patrick Wooden filed suit against several correctional officers employed by the Alabama Department of Corrections and alleges under 42 U.S.C. § 1983 that the officers beat him without provocation on July 23, 2020. Doc. no. 1. He also sues Wardens William Streeter and Chadwick Crabtree, as well as Departmental Commissioner John Hamm, under § 1983 for deliberate indifference and failure to supervise under the Fourth, Eighth, and Fourteenth Amendments. [1] *Id.* at 11–14.

Plaintiff alleges that defendants Streeter, Crabtree, and Hamm were deliberately indifferent to his constitutional rights in two respects. First, he claims that those defendants failed to protect him, and displayed a deliberate indifference to both the generalized environment of harm at Limestone Correctional Facility, as

---

[1] This order addresses motions filed by the latter group of defendants: *i.e.* Wardens Streeter and Crabtree, and Commissioner Hamm. The other defendants named in plaintiff's complaint will be identified by name, or some other descriptive pronoun.

well as the specific harm he suffered at the hands of the correctional officers named as defendants. *Id.* Second, he alleges that defendants Streeter, Crabtree, and Hamm likewise failed to supervise those correctional officers, which led to his rights being violated. *Id.* Defendants Streeter, Crabtree, and Hamm filed motions to dismiss, arguing that Wooden failed to allege any specific factual details supporting a failure-to-protect or failure-to-supervise claim, and they further assert qualified immunity. They now ask this court to dismiss the claims asserted by plaintiff against them. Doc. nos. 10 & 24.

The court agrees with defendants—Wooden fails to adequately allege that they failed to protect him from either a generalized risk of excessive force at Limestone Correctional Facility, or from the specific risk of excessive force exerted by the correctional officers named as defendants. As explained below, Wooden does not adequately allege that there existed a substantial risk of serious harm, or that the defendants displayed deliberate indifference, or that the defendants' alleged deliberate indifference caused the constitutional violation plaintiff allegedly suffered. Wooden similarly fails to sustain a failure-to-supervise claim. Accordingly, the motions to dismiss filed by defendants Streeter, Crabtree, and Hamm will be granted.

## I.  PLAINTIFF'S ALLEGATIONS

The Civil Rights Division of the United States Department of Justice released a report on the Alabama Department of Corrections in 2020. U.S. Dep't of Justice Civil Rights Div., *Notice Regarding Investigation of Alabama's State Prisons for Men* (July 23, 2020), https://www.justice.gov/crt/case-document/file/1297031/download (hereafter "Report," or "DOJ Report"). The report addressed conditions that then existed in thirteen Alabama prisons, including Limestone Correctional Facility in Harvest, Alabama, and catalogued generalized claims across those prisons. Its predominant conclusion was that overcrowding caused correctional officers to use excessive force to control prison populations. *Id.* However, the report does not provide a detailed account of the excessive use of force at Limestone Correctional Facility. *Id.*

Wooden is incarcerated at Limestone Correctional Facility. Doc. no. 1, at 2. He alleges that, early in the morning of June 20, 2023, correctional officer River Jacobs engaged in a physical altercation with another inmate. *Id.* at 6–7. Jacobs ended his shift at 8:00 a.m. and drove home. *Id.* However, he returned later that same day, at 6:00 p.m., and instructed Wooden to follow him to the shift office. *Id.* at 7. When they reached that office, Jacobs, Officer Clemmons, Officer Ward, and two other unnamed correctional officers began to beat Wooden, or refused to intervene

in the beating. *Id.* at 8–9. Wooden later required medical attention for his injuries. *Id.* at 9.

Wooden does not allege that, before the incident described, he reported any incident or potential future threat to defendants Streeter, Crabtree, or Hamm. Nor does he allege that any of the three defendants knew about Wooden specifically, or that they knew that Jacobs, Clemmons, and Ward were going to initiate the alleged beating.

## II. LEGAL STANDARD

Federal Rule of Civil Procedure 8(a)(2) establishes the general standard for pleading civil claims in federal court. *Randall v. Scott*, 610 F.3d 701, 708 (11th Cir. 2010). It states simply that a complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). To satisfy that standard, a claim need not contain "detailed factual allegations," but it must offer more than mere "labels and conclusions," or "a formulaic recitation of the elements of a cause of action." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). If the complaint contains conclusory allegations, the court must "apply a two-pronged approach of separating out the complaint's conclusory legal allegations and then determining whether the remaining well-plead factual allegations, accepted as true, plausibly give rise to an entitlement to relief." *Franklin v. Curry*, 738 F.3d 1246, 1251 (11th Cir. 2013) (internal quotation marks omitted).

## III.   DISCUSSION

Wooden asserts several claims against defendants Crabtree, Streeter, and Hamm, including: (1) deliberate indifference; (2) failure-to-protect; and (3) failure-to-supervise. Doc. no. 1. The defendants' motions to dismiss challenge all those claims, arguing that Wooden fails to state a claim for which relief could be granted. Doc. nos. 9 & 24. This opinion will combine the analysis of plaintiff's deliberate-indifference and failure-to-protect claims, because those claims are functionally the same. The court then will address plaintiff's failure-to-supervise claim.

### A.    Deliberate Indifference and Failure to Protect

Wooden first alleges that the defendants were deliberately indifferent to the harmful conditions that existed within Limestone Correctional Facility, and failed to protect him from those conditions, in violation of the Fourth, Eighth, and Fourteenth Amendments. Doc. no. 1. In response, defendants argue that Wooden does not adequately allege that they failed to protect him from any specific or generalized risk of harm so as to violate his constitutional rights, and that they are, therefore, entitled to qualified immunity. Doc. nos. 10 & 25.

The Eighth Amendment prohibits the infliction of "cruel and unusual punishments." U.S. Const. amend VIII. Even so, prison custodians are not the "guarantor[s] of a prisoner's safety." *Purcell ex rel. Est. of Morgan v. Toombs Cnty., Ga.*, 400 F.3d 1313, 1320 (11th Cir. 2005). The Eighth Amendment does, however,

require that "inmates be furnished with basic human needs, one of which is 'reasonable safety.'" *Helling v. McKinney*, 509 U.S. 25, 33 (1993).

It is an unavoidable conclusion that the incarceration of persons against their will in "life-threatening condition[s]" is an unnecessary and wanton infliction of pain that constitutes "cruel and unusual punishment." *Id.* Inmates are punished with the loss of their freedom, but judges do not sentence them to be beaten, stabbed, raped, and murdered. Recognizing this, the Eighth Amendment provides an inmate the right "to be reasonably protected" from the "constant threat of violence" at the hands of other inmates, or the use of excessive force by correctional officers. *Purcell*, 400 F.3d at 1320. Inmate lawsuits based upon excessive use of force are generally known as "failure-to-protect claims." *Cox v. Nobles*, 15 F.4th 1350, 1357 (11th Cir. 2021).

To succeed on such a claim, a plaintiff must satisfy three elements. *Id.* First, he must show that he was incarcerated under conditions posing a substantial risk of serious harm. *Id.* at 1358. Second, he must show that the prison official had a "sufficiently culpable state of mind," amounting to "deliberate indifference." *Id.* "Third, and finally, the plaintiff must demonstrate causation—that the constitutional violation caused h[is] injuries." *Id.* (alteration applied).

To satisfy the first element—that he was incarcerated under conditions posing a substantial risk of serious harm—Wooden must allege "conditions that were extreme and posed an unreasonable risk of serious injury to his future health or

safety." *Marbury v. Warden*, 936 F.3d 1227, 1233 (11th Cir. 2016). This is known as the "objective" element. *Lane v. Philbin*, 835 F.3d 1302, 1307 (11th Cir. 2016). Wooden can allege this element in two ways: that is, by showing either that (1) the defendants failed to protect against a generalized lack of safety for his conditions of confinement; or (2) that the defendants failed to protect him against a specific threat. *Marbury*, 936 F.3d at 1233, 1235; *see also Barefield v. Dunn*, 688 F. Supp. 3d 1026, 1063–64 (M.D. Ala. 2023) (discussing the two types of failure-to-protect claims).

As for the second element—that prison officials had a culpable state of mind amounting to deliberate indifference—Wooden must show that the defendants (1) were subjectively aware that Wooden was at risk of serious harm, (2) disregarded that risk, and (3) acted with "subjective recklessness as used in criminal law." *Wade v. McDade*, 106 F.4th 1251, 1255 (11th Cir. 2024) (*en banc*).

Finally, "the plaintiff must show a 'necessary causal link' between the defendant's failure to act reasonably and the plaintiff's injury." *Marbury*, 936 F.3d at 1233 (quoting *Rodriguez v. Sec'y for Dep't of Corr.*, 508 F.3d 611, 623 (11th Cir. 2007)). This causal connection element requires the plaintiff to show that the defendant "(1) had the means substantially to improve the inmate's safety, (2) knew that the actions he undertook would be insufficient to provide the inmate with reasonable protection from violence, and (3) had other means available to him which

he nevertheless disregarded." *Nelson v. Tompkins*, 89 F.4th 1289, 1298 (11th Cir. 2024) (quoting *Rodriguez*, 508 F.3d at 622).

Upon review of Wooden's complaint, the court assumes that he asserts both generalized and specific failure-to-protect claims against defendants Crabtree, Streeter, and Hamm. Thus, the court will initially address Wooden's generalized claim against the three defendants: *i.e.*, that they were deliberately indifferent and failed to protect him against the generalized threat of excessive force at Limestone Correctional Facility. Next, the court will address the three defendants' failure to protect Wooden against the threat from correctional-officer defendants Jacobs, Clemmons, and Ward specifically.

### 1. Failure to protect against a generalized risk of harm

#### a. Wooden fails to establish that there was a substantial risk of serious harm at Limestone Correctional Facility

Wooden alleges that defendants Crabtree, Streeter, and Hamm displayed a deliberate indifference to the generalized use of excessive force at Limestone Correctional Facility. Doc. no. 1, at 11–14. In particular, he alleges that the Department of Justice report on the excessive use of force in prisons within the Alabama Department of Corrections system put those defendants on notice of the dangerous conditions existing within Limestone Correctional Facility. *Id.* And Wooden alleges that the defendants displayed a deliberate indifference to resolving

those conditions, which subsequently led to the violation of his constitutional rights. *Id.*

Defendants respond that Wooden failed to allege any facts that establish a general threat of excessive use of force at Limestone beyond citing to the DOJ report; and, therefore, he has failed to allege an objective risk of serious harm required to assert a generalized failure-to-protect claim. Doc. no. 25, at 19–22.

To establish that a generalized risk of violence supports a substantial risk of serious harm, the plaintiff must identify the specific features of a facility or its population that render it particularly violent. *Marbury*, 936 F.3d at 1235. While "occasional, isolated attacks by one prisoner [or guard] on another may not constitute cruel and unusual punishment," a plaintiff's "confinement in a prison where violence and terror reign is actionable." *Id.* at 1234 (alteration supplied). To establish deliberate indifference based on a generalized risk, the plaintiff must show "that serious [excessive force by correctional officers] was the norm or something close to it." *Id.* (alteration supplied).[2]

To establish that general conditions created a substantial risk of serious harm, a plaintiff may, as here, support his claim with a Department of Justice report about prison conditions, but that is not alone sufficient. He must also provide specific

---

[2] While the cited authority concerns inmate-on-inmate violence, the same framework for liability applies to a failure to protect claim based on the risk of excessive force. Both claims involve an assessment of the supervisory officials' deliberate indifference to a risk of serious harm.

instances of harm for the element to be satisfied. *See Dickinson v. Cochran*, 833 F. App'x 268, 271–73 (11th Cir. 2020)*; see also Barefield v. Dunn*, 688 F. Supp. 3d 1026, 1068–69 (M.D. Ala. 2023); *Williams v. Pelzer*, 2024 WL 5113239, at *33–38 (N.D. Ala. Dec. 13, 2024). For example, in *Dickinson*, the plaintiff alleged that the wardens and sheriff knew about inmate-on-inmate violence and, with such knowledge, "routinely housed dangerous inmates in crowded conditions with non-violent inmates." *Dickinson*, 833 F. App'x at 272. The plaintiff then alleged that the defendants failed to implement a proper classification system to separate violent from non-violent inmates, failed to adequately train correctional officers regarding classifications, and failed to properly search inmates to limit the introduction of contraband that led to more intense inmate-on-inmate violence. *Id.* The Eleventh Circuit concluded that those allegations could be sufficient to establish a supervisory official's deliberate indifference. *Id.* at 273.

Likewise, in *Barefield*, the court concluded that the plaintiff had sufficiently alleged an objectively serious, substantial risk of inmate-on-inmate violence when he stated that: the prison had 54 reported assaults each month for approximately two years; there were more than 160 reported sexual assaults over two years; inmates routinely possessed contraband weapons; and, there was a complete lack of inmate monitoring. *Barefield*, 688 F. Supp. 3d at 1068–69. Plaintiff provided even more specific factual allegations, including that guards allowed inmates to access

unauthorized spaces, with little to no supervision, and that the inmates were allowed to construct makeshift tents to prevent guards from seeing or preventing criminal activity. *Id.* at 1071–72. Additionally, plaintiff alleged that multiple cell doors in the prison had broken locks, allowing inmates to roam freely throughout the night. *Id.* at 1071–72.

Finally, in *Williams*, the plaintiff used the DOJ report to support the existence of a generalized risk of serious harm from correctional officers. *Williams*, 2024 WL 5113239, at *36. But, he also pointed to the danger he faced because of his recurring complaints about the conditions at the facility, and that his reports made him susceptible to retaliation from the correctional officers, particularly while he was interned in solitary confinement. *Id.* All of those factual allegations established a minimum level of detail that allowed Williams to proceed with his claim that he suffered from an objectively substantial risk of serious harm.

Here, however, Wooden does not provide sufficiently detailed factual allegations in his complaint to establish that he suffered from a substantial threat of serious harm at Limestone Correctional Facility. His complaint relies almost exclusively on the 2020 Department of Justice report, doc. no. 1, at 4–6, and provides only two additional facts beyond that report. First, that Limestone is currently fifty-one percent over capacity. *Id.* Second, that he personally suffered from an instance of excessive force on June 20, 2023—the basis for his complaint against the

11

correctional officers named as defendants. *Id.* at 7–9. Beyond those, the complaint contains only conclusory allegations that the conditions cited in the DOJ report still exist at Limestone, and that the defendants failed to properly staff Alabama prisons, leading to more uses of excessive force. That is not enough. In contrast, the plaintiff in *Barefield* alleged numerous facts concerning the threat of inmate-on-inmate violence, including detailed records of the number of violent reports within particular time periods. The plaintiff in *Dickinson* indicated the policies that contributed to the threat of generalized inmate-on-inmate violence, as well as the supervising defendants' failure to implement other policies that would mitigate that violence. And in *Williams*, the plaintiff pointed to the harm faced by inmates who made prison reports, and who then were housed in solitary confinement.

Wooden's complaint provides no similar level of detail. Beyond the overcrowding, Wooden failed to point to any particular features at Limestone or its population—beyond generalized allegations—that would render it especially violent. *See Marbury*, 936 F.3d at 1235. In other words, Wooden failed to allege that excessive force by correctional officers was the norm, or something close to it, at Limestone Correctional Facility. *See Id.* at 1234–35. Rather, he only points to one alleged instance of excessive force: his own. That amounts to only an "occasional, isolated attack[]" by correctional officers—which is insufficient to establish a condition where "terror reign[s]." *Id.* at 1234. Accordingly, he fails to establish that

there was a substantial risk of serious harm at Limestone Correctional Facility, and his generalized failure-to-protect claim against defendants Crabtree, Streeter, and Hamm fails.

> **b.    Even if Wooden established that there was a substantial risk of serious harm, he failed to allege that the defendants were deliberately indifferent.**

In his complaint, Wooden alleges that defendants Crabtree and Streeter were "legally responsible for the operation of the Limestone Correctional Facility and for the welfare of all the inmates of that prison." Doc. no. 1, at 3. Moreover, in his response to the defendants' motions to dismiss, plaintiff argues that it is well known that the prisons within the Alabama Department of Corrections system are overcrowded and understaffed, and the defendants knew or should have known about those conditions. Doc. no. 15, at 3–5.

Defendants respond that Wooden fails to assert any facts showing that they knew about the excessive use of force by correctional officers at Limestone Correctional Facility. Doc. no. 18, at 5. They argue that Wooden relies only upon the DOJ report, the alleged incident in this case, and the assertion that they otherwise should have known due to their position of responsibility—examples which are insufficient to establish that defendants Streeter, Crabtree, and Hamm had the subjective knowledge required to show deliberate indifference. *Id.* at 5–7.

To establish deliberate indifference, Wooden must show that the defendants: (1) were subjectively aware that he was at risk of serious harm; (2) disregarded that risk; and (3) acted with "subjective recklessness as used in criminal law." *Wade*, 106 F.4th at 1255. Each requirement has its own test.

To establish that the defendants were subjectively aware that the plaintiff was at risk of serious harm, Wooden must allege that the "prison official *actually knew* of a substantial risk of serious harm, not just that he *should have known.*" *Id.* at 1257 (emphasis in original). For the second element, the test for determining whether a risk has been disregarded is objective: that is, the defendant "must have responded to the known risk in an unreasonable manner." *Marbury*, 936 F.3d at 1233; *Wade*, 106 F.4th at 1262. Lastly, in order to satisfy the element that a defendant acted with "subjective recklessness as used in the criminal law," the plaintiff must allege "that the defendant was subjectively aware that his own conduct put the plaintiff at substantial risk of serious harm." *Wade*, 106 F.4th at 1262.

A prison official possesses subjective knowledge when the official is "*both* aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, *and also draws the inference.*" *Bowen v. Warden*, 826 F.3d 1312, 1321 (11th Cir. 2016) (quoting *Farmer v. Brennan*, 511 U.S. 825, 837 (1994)) (emphasis supplied, internal alterations omitted). For example, the plaintiff in *Williams*, among other things, filed multiple grievances with Limestone Correctional

14

Facility officials, and his counsel submitted a cease-and-desist letter to the Wardens to remediate the issues relating to the alleged failure to protect. *Williams*, 2024 WL 5113239, at *34. Likewise, in *Marbury*, the plaintiff sent multiple letters to the Warden stating that he witnessed fifteen stabbings and expressed fear for his own safety. *Marbury*, 936 F.3d at 1233–34.

Here, Wooden fails to allege facts that would show that defendants Crabtree, Streeter, or Hamm (1) actually knew of the existence of a substantial risk of serious harm, (2) disregarded that risk in an objectively unreasonable manner, and (3) acted with subjective recklessness as used in criminal law. He merely states that the defendants were legally responsible for the conditions at Limestone Correctional Facility, and either knew, or should have known, about the risk of excessive force at the hands of correctional officers because of their position and the DOJ Report. But such assertions amount only to conclusory statements. After the court screens those out, and looks only at the well-pleaded allegations, Wooden does not otherwise provide any reasons to establish that defendants Crabtree, Streeter, or Hamm *actually knew* of the risk that inmates might be subjected to excessive force by correctional officers, responded to the risk in an objectively unreasonable manner, and acted with a criminal recklessness that put Wooden at risk.

Thus, even assuming that Wooden established that there was a substantial risk of serious harm, he fails to sufficiently allege that the defendants displayed a

deliberate indifference to that substantial risk, and his generalized failure-to-protect claim fails.

### c.    Even if Wooden established that the defendants displayed deliberate indifference, he fails to allege that the defendants' deliberate indifference caused his injuries

Lastly, Wooden alleges that defendants Crabtree, Streeter, and Hamm's deliberate indifference to the substantial risk of serious harm led to his alleged constitutional violation. Doc. no. 1. The defendants respond that Wooden fails to identify any specific policy, or failure to address the conditions at Limestone, that would establish a causal relationship between those conditions and his injury. Doc. no. 10, at 21–23; doc. no. 25, at 20–21.

To prove causation in a generalized excessive force claim, the plaintiff must allege three things. First, each defendant's authority must be evaluated individually for personal liability to attach. *Williams v. Bennett*, 689 F.2d 1370, 1384 (11th Cir. 1982). Second, a defendant cannot have caused an excessive risk of inmate violence from conditions of confinement if he is powerless to lessen or mitigate that risk. *Id.* And third, a defendant can be found causally linked to an excessive risk of inmate violence by failing to effectively prevent the risk through deliberate indifference, or by having the power to substantially improve prisoner safety but failing to do so with deliberate indifference. *Hale v. Tallapoosa Cnty.*, 50 F.3d 1579, 1584 (11th Cir. 1995). Accordingly, Wooden must sufficiently allege that the defendants' deliberate

indifference led to the excessive risk of violence, and then that the excessive risk of violence led to Wooden's injury. *Id.*

Again, Wooden's complaint fails to adequately allege causation. Beyond conclusory allegations, he has not shown how the defendants' actions, inactions, or policies *caused* the excessive risk of violence, nor how that excessive risk of violence led to his injuries. More importantly, he fails to allege that the defendants violated his constitutional rights by failing to protect him against a generalized risk of violence at Limestone Correctional Facility. Accordingly, Wooden has failed to state a claim for which relief could be granted.

### 2.    Failure to protect against a specific risk of harm

Crabtree, Streeter, and Hamm also argue that Wooden fails to adequately allege that they were subjectively aware of the specific harm he faced from defendants Ward, Jacobs, and Clemmons. Doc. no. 10, at 17–19; doc. no. 25, at 15–18. Wooden responds that he did not need to warn the defendants about the alleged intentions of the correctional officers in order to establish a claim that the defendants failed to protect him against a specific harm. Doc. no. 15, at 9–14; doc. no. 28, at 9–14.

To establish that defendants failed to protect Wooden from a specific threat, Wooden need not show that he would be assaulted by a particular correctional officer who used excessive force. *Marbury*, 936 F.3d at 1236. Even so, he must allege that

the defendants "possess[ed] enough details about a threat to enable them to conclude that it presents a 'strong likelihood' of injury, not a 'mere possibility.'" *Id.* In the inmate-on-inmate violence context, supervisory officials are not necessarily indifferent just because an inmate reports another inmate to those officials. Instead, there must be a *substantial* risk of harm. *Id.* In other words, Wooden must show that the defendants could have concluded that there was evidence of a substantial threat, rather than the mere possibility, of serious harm. *Id.*

In this case, Wooden fails to allege that the defendants were aware of any specific and serious threat that he faced from any correctional officer—including Officers Jacobs, Ward, or Clemmons—to display deliberate indifference. He does not allege that any of the defendants were on notice, or that any of them "*actually knew*" of a substantial risk of serious harm, not just that they "*should have known*." *Wade*, 106 F.4th at 1257 (emphasis in original). Thus, he has not sufficiently alleged that any of the defendants displayed deliberate indifference. Further, without adequately alleging the existence of that deliberate indifference, Wooden also fails to show causation. Therefore, Wooden's failure-to-protect claim against a specific risk of harm fails.

## B.    Supervisory Liability

Wooden also alleges that defendants Streeter, Crabtree, and Hamm failed to supervise the correctional officer defendants in violation of § 1983, and he repeats

the allegations of his deliberate indifference claims. Doc. no. 1, at 17–19. Conversely, the defendants argue that Wooden has not met the extremely rigorous burden of showing that the defendants failed to supervise the correctional officer defendants. Doc. no. 10, at 23–24; Doc. no. 25, at 22–23.

"It is well established in this circuit that supervisory officials are not liable under § 1983 for the unconstitutional acts of their subordinates on the basis of respondeat superior or vicarious liability." *Hartley v. Parnell*, 193 F.3d 1263, 1269 (11th Cir. 1999) (quotation marks omitted). "Instead, supervisory liability under § 1983 occurs *either when* the supervisor personally participates in the alleged unconstitutional conduct *or when* there is a causal connection between the actions of a supervising official and the alleged constitutional deprivation." *Cottone v. Jenne*, 326 F.3d 1352, 1360 (11th Cir. 2003) (emphasis supplied).

"The deprivations that constitute widespread abuse sufficient to notify the supervising official must be obvious, flagrant, rampant and of continued duration, rather than isolated occurrences." *Keith v. DeKalb Cnty., Georgia*, 749 F.3d 1034, 1048 (11th Cir. 2014) (internal quotation mark omitted). The standard for determining whether such widespread abuse exists is largely the same as the standard for determining whether there was a substantial risk of harm under a failure-to-protect, generalized-risk theory. *See Barefield*, 688 F. Supp. 3d at 1064, n.17.

"The necessary causal connection can be established when a history of widespread abuse puts the responsible supervisor on notice of the need to correct the alleged deprivation, and he fails to do so." *Keith*, 749 F.3d at 1048 (quoting *Cottone v. Jenne*, 326 F.3d 1352, 1360 (11th Cir.2003)). Alternatively, the "causal connection may be established when a supervisor's custom or policy . . . result[s] in deliberate indifference to constitutional rights or when facts support an inference that the supervisor directed the subordinates to act unlawfully or knew that the subordinates would act unlawfully and failed to stop them from doing so." *Id.* (quoting *Cottone*, 326 F.3d at 1360). Ultimately, though, "[t]he standard by which a supervisor is held liable in [his] individual capacity for the actions of a subordinate is extremely rigorous." *Braddy v. Fla. Dep't of Labor & Emp't. Sec.*, 133 F.3d 797, 802 (11th Cir. 1998).

Wooden's complaint fails to adequately allege that there was widespread abuse that was obvious, flagrant, rampant and of continued duration at Limestone Correctional Facility. Rather, his complaint alleges that the conditions at Limestone Correctional Facility are unchanged from the DOJ report's characterization. Doc. no. 1. But, as above, those allegations are conclusory, and they do not meet the "extremely rigorous" standard of showing how the defendants, directly or indirectly, violated his rights by failing to supervise defendants Jacobs, Ward, or Clemmons, or the general population of correctional officers at Limestone Correctional Facility. At

most, he alleges one isolated occurrence to establish the failure-to-supervise claim: his own. Thus, this claim, too, must fail.

## IV.    CONCLUSION

For the foregoing reasons, the court will grant the motions to dismiss filed by defendants William Streeter and John Hamm, doc. no. 9, and Chadwick Crabtree, doc. no. 24. A separate order consistent with this memorandum opinion will be entered contemporaneously herein.

**DONE** and **ORDERED** this 13th day of January, 2026.

_____
Senior United States District Judge

21